The ASSOCIATED PRESS, a corporation, Plaintiff-Appellee,

v.

William S. COOK, d/b/a Radio Station KRYT, and Individually, Defendants-Appellants.

No. 74–1429.

United States Court of Appeals, Tenth Circuit.

April 14, 1975.

Orville A. Kenelly, Colorado Springs, Colo., for defendants-appellants.

Cuba Y. Holloway, Colorado Springs, Colo., for plaintiff-appellee.

Before HILL, SETH and BARRETT, Circuit Judges.

HILL, Circuit Judge.

This is an appeal from an order granting summary judgment in a breach of contract action.

The Associated Press (AP) is a New York corporation engaged in the business of providing a news service to its member organizations. William Cook is the owner-operator of radio station KRYT in Colorado Springs, Colorado. He applied for and received associate member status in the AP and began using its news service on August 1, 1965.

Cook and AP entered into a ten year news service contract on October 14, 1965. It set forth payments, subject to yearly increases, to be made by Cook and also provided, inter alia,

2. In the event that the assessment payable hereunder shall, at any time . . . be increased by the Board of Directors by more than twenty-five per cent . . . during any two-year period, the Member shall have the right, at any time within sixty (60) days after . . . written notice of

such increased assessment . . . to terminate this agreement upon seven (7) days written notice . . . to The Associated Press. . . .

8. In the event that any of the terms . . . of this agreement shall be or become contrary to or inconsistent with the By-Laws of The Associated Press, the By-Laws shall control. The Associated Press agrees to give the Member not less than thirty (30) days' prior notice . . . of any amendment to its By-Laws, the effect of which will be to diminish the rights or increase the obligations of the Member under this agreement. The Member shall have the right to terminate this agreement upon the effective date of any such amendment . . . provided that notice in writing of the Member's intention to terminate is given to The Associated Press . . not less than ten (10) days prior thereto.

13. If the member shall fail to pay the assessment provided for . . . when due . . . the news service . . . may be suspended and the Member shall be liable . . . for the total amount of assessments . . for the balance of the term. . . .

Cook's payments under the contract were increased every year by scaled increases. Additionally, AP's Board of Directors increased the amounts of the payments on January 1, 1967, on February 2, 1969, and on March 1, 1970.

AP notified its members on March 12, 1971, that a proposed amendment to its by-laws would be considered at its annual meeting on April 19, 1971. The amendment, relating to qualifications of directors, was adopted and became effective on April 19, 1971.

Beginning on March 28, 1971, Cook stopped paying AP for the news service it was providing. He subsequently informed AP that he was terminating the contract on October 1, 1971. AP suspended news service to Cook on October

12, 1971, and thereafter filed this breach of contract action against him in the United States District Court for the District of Colorado. The complaint sought $13,435.07 for past due assessments and for loss of future revenue under the contract.

Cook answered and admitted owing some money to AP but denied owing the amount alleged in the complaint. As affirmative defenses he alleged that he had validly terminated the contract (1) pursuant to paragraph 2 thereof because AP increased his assessments payable during a two year period by more than twenty-five percent, and (2) pursuant to paragraph 8 thereof because he was not given notice of a by-laws amendment which diminished his rights or increased his obligations under the contract.

Thereafter, AP filed a motion for summary judgment accompanied by supporting affidavits. Cook did not file any opposing affidavits. The trial court denied the motion on the grounds an issue of fact existed as to whether AP amended its by-laws in such a way as to affect Cook and, if so, whether he received notice thereof. AP then filed a supplemental motion for summary judgment, supported by affidavits showing the amendment did not affect Cook and that he received notice of it. Again, Cook did not file any opposing affidavits.

Trial was set for April 15, 1974. On April 11, 1974, AP successfully moved to vacate the trial date. Subsequently, its supplemental motion for summary judgment was heard and granted.

On appeal, numerous grounds for reversal are proffered. Initially, Cook contends summary judgment was improperly granted because genuine issues of material fact existed regarding his right to terminate the contract. He also asserts that the contractual provisions regarding these rights were ambiguous and could only be resolved by resort to writings that were not before the trial court.

■ We believe Cook's reliance on these issues is misplaced. They are material only insofar as they concern his right to terminate the contract in question. That contract, however, could be terminated only if he exercised the option to do so within a specified time after the happening of certain events. Thus, it is unnecessary to determine if events occurred which gave him the option to terminate if he did not validly exercise that option.

For this reason we believe the trial court properly granted summary judgment. The pleadings, affidavits and other documents before it show that, although Cook did attempt to terminate the contract on October 1, 1971, such termination was not within the contract's prescribed time limits and was ineffective. AP gave its members more than 30 days' notice of a proposed by-laws amendment that became effective on April 19, 1971. If this amendment affected Cook's contract rights he had the option of terminating the contract by April 9, 1971. He failed to do this.

Similarly, he did not give timely notice to terminate the contract because of increased assessments by AP's Board of Directors. The record indicates that the last assessment made by the Board of Directors was on March 1, 1970. Under the contract Cook had sixty days to terminate. Again, he failed to do so.

■ Cook next contends the contract's unilateralness was a disputed issue of fact making summary judgment improper. Our search of the record discloses that this issue was not raised before the trial court either in the pleadings or the pre-trial order. It is thus inappropriate for appellate review. The next argument must also fail as being inappropriate for our consideration. Cook asserts that AP's summary judgment motion was not filed within the time limits prescribed by the pre-trial order. Since he did not object to the motion this argument is deemed waived on appeal.

■■ It is next argued that summary judgment was improper because a genuine issue of material fact existed as to the unconscionability of damages. We

disagree. In the pre-trial order the parties conceded "that the amounts claimed by the Plaintiff as shown by the Complaint and Plaintiff's exhibits are accurate and are the proper measure of damages to Plaintiff unless Defendant had a right to terminate the agreement." This concession disposed of the damages issue, since parties are bound by their admissions and stipulations included in a pre-trial order. *See, e. g.,* Monod v. Futura, Inc., 415 F.2d 1170 (10th Cir. 1969); United States v. Sommers, 351 F.2d 354 (10th Cir. 1965); 3 Moore's Federal Practice ¶ 16.19 (2nd ed. 1974).

■ Cook nevertheless contends the trial court, pursuant to Rule 16, F.R. Civ.P.,[1] should have amended the pre-trial order on the issue of damages to prevent manifest injustice. This argument appears to be a complete afterthought as Cook never attempted to have the order amended. In any event, our review of the record has failed to disclose any manifest injustice.

■ The trial court erred, Cook contends, in granting AP's motion to vacate the trial date because AP filed the motion as a delaying tactic for the purpose of obtaining a hearing on its supplemental motion for summary judgment. We disagree. The record reveals that AP filed the motion to vacate because a necessary witness was involved in a trial in another jurisdiction and would be unavailable at the scheduled time of trial in the instant case.[2]

■ Cook also contends he was prejudiced because the trial court did not enter an order vacating the trial date and because he did not receive notice of the hearing on AP's supplemental motion for summary judgment. We believe the trial court's failure to enter the order in question was a mere clerical oversight which did not affect the order's validity or prejudice Cook. *See, e. g.,* Zadig v. Aetna Ins. Co., 42 F.2d 142 (2d Cir. 1930); 60 C.J.S. Motions & Orders § 59(1) (1969). We also find it unnecessary to consider the notice issue. This was not objected to or brought to the trial court's attention and is therefore inappropriate for appellate consideration.

■ Cook next contends the affidavits filed in support of AP's motions for summary judgment should have been disregarded by the trial court. He argues they did not meet the requirements of Rule 56, F.R.Civ.P.,[3] because they were not based on personal knowledge, did not show that the affiant was competent to testify and because they set forth facts that would be inadmissible.

This argument is made for the first time on appeal. The record does not disclose that Cook filed a motion to strike or otherwise objected to the affidavits. Under these circumstances any formal defects contained in the affidavits are deemed to be waived and the trial court may consider them in ruling on the summary judgment motions. *See, e. g.,* Klingman v. National Indem. Co., 317 F.2d 850 (7th Cir. 1963); 6 Moore's Federal Practice ¶ 56.22[1] (2d ed. 1974).

Affirmed.

---

1. Rule 16 provides, in part: "The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice."

2. Although the scheduled trial date was April 15, 1974, AP's motion stated the witness would be "unavailable on March 15, 1974, and the remainder of the week following that date. . . . " Cook relies on this in support of his argument. The date set forth in the motion is obviously a typographical error, as the trial date was not set until March 20, 1974, and the motion was not filed until April 11, 1974.

3. Rule 56(e), F.R.Civ.P., provides in part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."