594 F.2d 701
 19 Fair Empl.Prac.Cas. 301, 19 Empl. Prac.
Dec. P 9080
Andrew WILLIAMS, Jr., Plaintiff-Appellant,
v.
EVANGELICAL RETIREMENT HOMES OF GREATER ST. LOUIS, d/b/a
Friendship Village, Defendant-Appellee.
 No. 78-1717.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 14, 1979.
Decided March 20, 1979.
 
 Donald L. McCullin, St. Louis, Mo., argued and on brief, for plaintiff-appellant.
 Michael J. Bobroff, St. Louis, Mo. (argued), Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., on brief, for defendant-appellee.
 Before BRIGHT and STEPHENSON, Circuit Judges, and BOGUE, District judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Williams initiated this lawsuit alleging that he was wrongfully discharged from defendant's employment because of his race. The district court granted defendant's motion for summary judgment and dismissed the complaint with prejudice. Williams timely appeals. We reverse and remand.
 
 
 2
 Defendant Friendship Village of West County is a retirement center and nursing home operated by Evangelical Retirement Homes of Greater St. Louis, Inc., a not-for-profit Missouri corporation (hereinafter the Village). The complaint alleges that the plaintiff, Andrew Williams, Jr., was employed by the Village from August 1, 1975, to June 4, 1976. The complaint further alleges that on or about April 3, 1976, Williams was denied promotion and that on June 4, 1976, he was discharged because of his race, in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq.[1] Williams seeks declaratory and injunctive relief, reinstatement and backpay, costs and attorneys' fees.
 
 
 3
 The Village answered by denying that it was at any time Williams' employer and moved for summary judgment. In support the Village submitted the affidavit of Norman Hunter. Hunter stated that he had been Executive Director and Operations Manager for the Village since September 1, 1976. He stated that in February 1977, after learning of Williams' charges, he conducted an investigation from which he learned that during the relevant period the Village utilized Food Service Management, Inc. to provide food service at the Village. Food Service employed its own manager, who hired and fired food handling employees. None of the management employees of the Village exercised supervisory or managerial control over any of the food handling employees hired by Food Service. Williams was hired by Food Service and was terminated by their manager, Robert Fortel, in June 1976. No employee of the Village played any role whatsoever concerning the decision to terminate Williams or the actual termination of him. This was done by Fortel, who has never been an employee of the Village. The Village does not have any personnel file containing any information concerning the hiring or termination of Williams since these were done by Food Service. Hunter further stated he understood that Williams also filed a charge of employment discrimination with the Equal Employment Opportunity Commission against Food Service at the same time he filed the charge against the Village, and that there was a conciliation agreement reached between Williams and Food Service.
 
 
 4
 In its motion for summary judgment, the Village contended Hunter's affidavit established that Williams was both hired and terminated by Food Service, that defendant Village played no part in his termination, and that Williams had reached a settlement agreement with Food Service. Because Williams settled with the employer which controlled his employment and terminated him, the Village asserted that the filing of the present lawsuit was improper, purposeless and moot.
 
 
 5
 Williams responded that summary judgment was inappropriate because material facts remained in dispute, specifically (1) whether Food Service was the agent of the Village; (2) whether Williams was both hired and fired by Food Service; and (3) whether a settlement had been reached. Williams submitted a supporting affidavit and two exhibits. His affidavit stated that under the agreement between the Village and Food Service (Exhibit A) the Service was to be the agent of the Village and under its direct and immediate control. Williams' affidavit further stated that his discharge was approved by R. Ferrier, an Associate Administrator of the Village. According to the affidavit, Williams' "Termination of Service Note" (Exhibit B) includes the signature "R. Ferrier." Williams' affidavit stated also that there was a "partial settlement" with Food Service.
 
 
 6
 Apparently there was no hearing on the motion. On July 24, 1978, the district court entered an order granting the Village's motion for summary judgment and dismissing Williams' complaint with prejudice. In an accompanying memorandum the court held that the Village was not Williams' employer, that Food Service was an independent contractor, and that the Village had no control over the employment practices of Food Service. The court considered that none of the four factors set out in Baker v. Stuart Broadcasting Co., 560 F.2d 389, 392 (8th Cir. 1977), for determining whether two corporations could be considered as a single employer[2] were satisfied in this case. Thus, since the unlawful employment practices, if any, were committed by the independent contractor of defendant Village, the court concluded that no genuine issue of material fact remained for trial and, accordingly, granted summary judgment for defendant.
 
 
 7
 Summary judgment has frequently been described as " 'an extreme remedy and one which is not to be entered unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances.' " Goodman v. Parwatikar, 570 F.2d 801, 803 (8th Cir. 1978), Quoting from Bellflower v. Pennise, 548 F.2d 776, 777 (8th Cir. 1977); Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207 (8th Cir. 1976). Summary judgment may be granted only "if the pleadings * * * together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Nix v. Sweeney, 573 F.2d 998, 1001 (8th Cir. 1978). The burden is on the moving party to demonstrate the absence of any genuine issues of material fact. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Percival v. General Motors Corp., 539 F.2d 1126, 1128-29 (8th Cir. 1976).
 
 
 8
 Williams contends on appeal that the court erred in ruling that no genuine issues of material fact remained for trial and in entering summary judgment. We agree.
 
 
 9
 Fed.R.Civ.P. 56(e) requires, Inter alia, that affidavits supporting or opposing summary judgment shall be made on personal knowledge. McSpadden v. Mullins, 456 F.2d 428, 430 (8th Cir. 1972). It is clear that Hunter's affidavit is not based on personal knowledge of the facts surrounding Williams' discharge. Hunter did not assume his position as Executive Director of the Village until September 1, 1976, three months after Williams' discharge and one month after the termination of the contract between the Village and Food Services. His affidavit was based on an investigation he conducted in February 1977.
 
 
 10
 Williams has raised this objection to the Hunter affidavit on appeal. However, he apparently failed to make this objection to the trial court. No motion to strike the affidavit is in the record. The general rule is that defects in the form of the affidavits are waived if not objected to at the trial court level. Absent a motion to strike or other timely objection, the trial court may consider a document which fails to conform to the formal requirements of Rule 56(e). See, e. g., Chambers v. United States, 357 F.2d 224 (8th Cir. 1966); Associated Press v. Cook, 513 F.2d 1300 (10th Cir. 1975); Klingman v. National Indemnity Co., 317 F.2d 850, 854 (7th Cir. 1963).
 
 
 11
 There is some authority that this general rule applies to the personal knowledge requirement as well. Associated Press v. Cook, supra ; Klingman v. National Indemnity Co., supra. Other cases indicate that the personal knowledge requirement is "mandatory" but do not address the question of whether this defect may be waived by failure to timely object. Kern v. Tri-State Insurance Co., 386 F.2d 754 (8th Cir. 1968); United States v. Bosurgi, 530 F.2d 1105, 1112 (2d Cir. 1976).
 
 
 12
 It is therefore arguable that the district court erred in even considering the Hunter affidavit since it is apparent from the statement itself that the facts recited therein were not based on Hunter's personal knowledge.
 
 
 13
 However, even if Williams waived challenge to the Hunter affidavit by his failure to object in the trial court, his own affidavit and exhibits are sufficient to demonstrate that genuine issues of material fact remained for trial. Thus, even if the trial court properly considered the Hunter affidavit, summary judgment was erroneous.
 
 
 14
 Exhibit A, attached to Williams' affidavit, is apparently a copy of the agreement between the Village and Food Service. This document is not certified as required by Rule 56(e). Further, only part of the agreement was submitted as an exhibit so that there is nothing to indicate the agreement was in fact signed by the parties. However, the Village apparently made no objection to the document in the trial court and has not challenged the authenticity of the document on appeal. The lack of certification is the type of technical defect which is waived by a failure to timely object. See 10 C. Wright & A. Miller, Federal Practice and Procedure § 2722 at 486; 6 Moore's Federal Practice § 56.22(1) at 1330.
 
 
 15
 In the agreement Food Service is referred to as the "Company" and the Village as the "Client." The agreement states that the Company is employed as agent of the Client and shall operate its food service facilities under "the direct and immediate control of * * * Client." With the exception of a Resident Food Service Director to be furnished by the Company, all food service employees are consistently referred to as "Client's employees." The agreement states that the Company shall "be responsible for direction, scheduling, and training of Client's employees assigned to Client's food service department." (Emphasis added.) Notably, there is nothing in the agreement regarding responsibility for hiring and discharge of food service employees. With the exception of the Resident Food Service Director, all food service personnel are to be paid by the Client. The Client is required to reimburse the Company for the salary of the Food Service Director. The Client is to pay the Company a management fee plus expenses for food and supplies.
 
 
 16
 Exhibit B, allegedly Williams' "Termination of Service Note," is also uncertified. Williams' name does not appear on the note, and it is undated. The Village apparently did not object to the note in the trial court and does not challenge it on appeal. The note bears two signatures which are not entirely legible but which appear to be "Robert J. Fortel" and "R. Ferrier." According to Hunter's affidavit, Fortel was Food Service's manager at the time Williams was discharged. According to Williams' affidavit, Ferrier was Associate Administrator of the Village.
 
 
 17
 Williams' exhibits establish that there are material disputed issues of fact. By its terms, the agreement indicates that Food Service personnel were employees of the Village and not employees of Food Service. If Exhibit B is what Williams states that it is, it indicates that a Village official did have some role in Williams' discharge. Viewing the evidence in the light most favorable to Williams and giving him the benefit of all reasonable inferences, it simply is not clear, notwithstanding the holding of the district court, that Williams was not employed by the Village and/or that the Village had no part in his discharge. Clearly, this disputed issue is material to the ultimate issue of the Village's liability for the allegedly wrongful discharge. Accordingly, the summary judgment entered for the Village was in error.
 
 
 18
 On appeal, the Village offers an alternative reason, not relied upon by the district court, why summary judgment was appropriate. The Village contends that even if Food Service was the agent of the Village, the present action is barred because Williams previously entered into a settlement agreement with Food Service pursuant to charges filed with the EEOC. The argument is that under Missouri law release of the agent operates to release the principal. This may in fact be a valid defense. However, the present record is simply inadequate to make such a determination. There is nothing in the record to indicate the terms or scope of the settlement. The nature of the relationships between the Village and Food Service and between each of these and Williams is disputed. Since many of the relevant facts are either unavailable in the record or disputed, it is impossible to determine on this motion for summary judgment whether or not the settlement with Food Service operated to release the Village. Accordingly, this alternative argument of the Village must be rejected.
 
 
 19
 Reversed and remanded for further proceedings.
 
 
 
 *
 The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 Williams provides no further facts regarding the allegedly discriminatory denial of promotion and discharge
 
 
 [2]
 As stated by the district court, these four factors are interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control