Bruce CUMMINGS, Appellant,

v.

Willis ROBERTS, Acting Warden and/or Superintendent for the St. Louis City Jail; Thomas Booker, Chief of Security for the St. Louis City Jail; and Donald Hill, Correctional Officer for the St. Louis City Jail, Appellees.

No. 79–2077.

United States Court of Appeals, Eighth Circuit.

Submitted July 24, 1980.

Decided Aug. 1, 1980.

Bruce Cummings, pro se.

Jack L. Koehr, City Counselor and Michael E. Hughes, Asst. City Counselor, St. Louis, Mo., for appellees.

Before LAY, Chief Judge, and HEANEY and ARNOLD, Circuit Judges.

HEANEY, Circuit Judge.

Bruce Cummings, while a pretrial detainee at the St. Louis City Jail, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging deprivations of his civil rights by the jail superintendent, Willis Roberts, the director of security, Thomas Booker, and a correctional officer, Donald Hill. The district court [1] granted defendants' motion for summary judgment. We affirm in part and reverse in part.

Cummings alleged the following: On January 13, 1979, defendant Donald Hill slammed Cummings between two cell doors, causing Cummings to sustain a severe back injury. Cummings received no medical care until January 16, 1979, notwithstanding the fact that he was suffering extreme pain from the injury. Although his back injury was serious enough to require hospital care, Cummings was not admitted to the hospital but instead was returned to the jail and placed in the deadlock tier (administrative segregation). The superintendent and the director of security then failed to give the medical care ordered by Cummings' doctors.

Cummings also alleged that in addition to defendants' failure to give him the necessary medical care, defendant Booker denied him access to a wheelchair or any other means to properly visit with loved ones, family members or his attorney, and failed to provide him with the needed help to properly clean himself.

On the basis of these factual allegations, Cummings made the following claims:

1. He was denied proper medical care.

---

1. United States District Court for the Eastern District of Missouri, the Honorable James H. Meredith.

2. Defendant Booker's refusal to provide him with a wheelchair or with the means to maintain adequate hygiene subjected him to cruel and unusual punishment.

3. Defendant Hill's negligent act of slamming the door on him subjected him to cruel and unusual punishment.

4. He was placed in administrative segregation without due process of law.

The defendants filed a motion for summary judgment. In support of their motion, they submitted the affidavits of two of the defendants. David[2] Hill stated that he did not slam a door shut on Cummings, and was unaware of any such accident or incident involving Cummings on that day. Roberts' affidavit was more extensive. With respect to Cummings' complaint about confinement in the deadlock tier, Roberts stated that Cummings was placed in protective custody because he was awaiting trial for the much publicized scalding death of a two-year-old child. Roberts stated that he feared for Cummings' safety because with his back injury, he would be unable to protect himself from attack. Regarding Cummings' complaint of cruel and unusual punishment due to the conditions of his confinement in the deadlock tier, Roberts stated that those placed in protective custody are given the same privileges as other inmates, including booth visits, telephone, law library and television. The chief distinction is that they are only allowed outside their cells one hour each day for exercise. Roberts stated that Cummings was not given a wheelchair because the medical personnel treating Cummings never ordered it, and because an investigation revealed that Cummings was observed on numerous occasions standing and walking unassisted in his cell and shower, and walking unassisted to and from the visitor's station. With respect to Cummings' claim of inadequate medical care, Roberts attached the record of Cummings' visits to sick call, his visits to Homer

G. Phillips Hospital from January 17, 1979, to February 1, 1979, and his service record, made by the Division of Social Services.

Cummings filed a responsive affidavit. He stated that as a direct result of the back injury he sustained in the jail, he was presently confined to the Missouri State Penitentiary Hospital, could not walk without assistance and had to use a wheelchair. He stated that his placement in the deadlock tier was punitive but that he had done nothing to warrant the punishment, and that the defendants denied him hot water, exercise and medication prescribed by doctors for his back injury. Finally, he complained that the medical records submitted with Roberts' affidavit were not certified.

The case was submitted to the magistrate, who recommended that defendants' motion for summary judgment be granted because (1) the complaint against Hill, based on the allegation that Hill negligently slammed the door on Cummings, failed to state a claim since § 1983 does not provide redress for merely negligent acts; (2) the medical evidence submitted with Roberts' affidavit proved that the defendants did not act with deliberate indifference to Cummings' medical needs; and (3) Cummings failed to allege any facts showing that his confinement on the deadlock tier was for punitive purposes; he was placed there for his own protection. The district court adopted the magistrate's recommendation, granting defendants' motion for summary judgment.

1. *Indifference to Plaintiff's Medical Needs*

■ The most serious allegation made by the plaintiff is that he was deprived of essential medical care. He does not dispute that he was given some medical care by doctors; he argues instead that the defendants deliberately interfered with his treatment.[3]

---

2. Cummings named Donald Hill as defendant. The superintendent of the jail in his affidavit stated that the only Hill employed as a correctional officer during Cummings' incarceration was named David, not Donald.

3. Cummings states a claim under *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), where the Supreme Court held that

We hold that the district court erred in granting summary judgment on this claim. The magistrate's report, which was adopted by the district court, recommended rejection of Cummings' claim of inadequate medical care on the theory that Cummings was seen numerous times by doctors and that his claim was therefore based on his disagreement with those doctors as to the appropriate medical care. The magistrate did not address the issue of deprivation of medical care based on the *defendants'* acts in denying or interfering with Cummings' treatment.

■ Furthermore, the evidence submitted to the district court by the defendants was not sufficient to support a grant of summary judgment on this issue. Roberts' affidavit was addressed largely to the question whether the medical care given by the doctors was adequate. Roberts made no response to Cummings' allegation that he was deliberately denied access to medical treatment for three days, and that the defendants failed to carry out the treatment prescribed by Cummings' doctors. It is true that seventeen pages of medical records were attached to Roberts' affidavit, but those records were not certified as required by Fed.R.Civ.P. 56(e) and thus were not properly considered by the district court. *See* 6 Moore's Federal Practice ¶ 56.22[1] at 56–1328; *Williams v. Evangelical Retirement Homes*, 594 F.2d 701, 704 (8th Cir. 1979); *Mitchell v. Beaubouef*, 581 F.2d 412, 416 (5th Cir. 1978), *cert. denied*, 441 U.S. 966, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979).

Summary judgment is "an extreme remedy and one which is not to be entered unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any

discernible circumstances." *Bellflower v. Pennise*, 548 F.2d 776, 777 (8th Cir. 1977); *see Williams v. Evangelical Retirement Homes, supra; Goodman v. Parwatikar*, 570 F.2d 801, 803 (8th Cir. 1978). This is not such a case.

2. *Conditions of Confinement in the Deadlock Tier*

■ In his complaint, Cummings alleged that he was bedridden due to his back injury but that the defendants refused to give him the help he needed to properly clean his person. He also alleged that because the defendants failed to give him a wheelchair, he was forced to crawl on the floor. These allegations are sufficient to state a claim of cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 102–103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976).

■ We find that the district court also improperly granted summary judgment with respect to this claim. In his affidavit, Roberts stated,

An investigation revealed however that plaintiff was observed on numerous occasions standing and walking unassisted in his cell and shower and walking unassisted to and from the visitor's station.

This statement is not based on Roberts' personal knowledge, as required by Fed.R.Civ.P. 56(e). It is therefore inadequate to support a summary judgment.

3. *Cummings' Injury*

Cummings alleged that defendant Hill's act of negligently slamming the cell door on him was cruel and unusual punishment. The magistrate concluded that § 1983 does not provide redress for merely negligent acts. Cummings contends on this appeal that his complaint adequately alleges that

deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, [428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)] (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in inten-

tionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.
*Id.* at 104–105, 97 S.Ct. at 291 (footnotes omitted).

Hill's act was intentional and malicious. He seeks leave to amend his complaint if this Court concludes otherwise.

In view of our remand on the issues of deprivation of essential medical care and cruel and unusual punishment, Cummings will have the opportunity to seek leave to amend his complaint to include any further allegations against Hill deemed necessary. Therefore, we need not discuss this issue further.

### 4. *Cummings' Transfer to the Deadlock Tier*

Cummings alleged that he was transferred to the deadlock tier without due process of law and in violation of the Eighth Amendment. Roberts, in his affidavit, stated that Cummings was transferred to the deadlock tier for protective custody purposes. Cummings conclusorily alleged in response that his placement in the deadlock tier was punitive. The magistrate recommended that since Cummings failed to allege any facts showing that his confinement was for punitive purposes, summary judgment was warranted.

In *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979), the Supreme Court stated, "Prison officials must be free to take appropriate action to ensure the safety of inmates * * *." Roberts swore that his intention in placing Cummings in segregation was to protect him from violent acts of other inmates. As the magistrate pointed out, Cummings, while alleging a punitive purpose on Roberts' part, failed to allege any facts to support such a punitive purpose. The district court properly granted summary judgment on this issue.

This case is remanded to the district court for further proceedings consistent with this opinion.

